IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Wendell X. Watkins, Sr.,                           Case No. 3:21-cv-00685

        Plaintiff,

        v.

Warden Sean Bowerman, *et al.*,                    **ORDER**

        Defendants.

This is a prisoner civil rights suit that, after a lengthy and somewhat tortuous journey has, at long last, become decisional by way of Defendants' motion for summary judgment (Doc. 33). Plaintiff, through assigned *pro bono* counsel, has responded (Doc. 38) and Defendants have filed a reply (Doc. 44).

Also before me is Defendants' motion to strike Plaintiff's late-filed exhibit to his opposition brief. (Doc. 46).

For the reasons that follow, I grant Defendants' motion for summary judgment. I deny Defendants' motion to strike as moot.

## Background

Plaintiff, Wendell X. Watkins Sr. is an inmate at the Toledo Correctional Institution (ToCI). He asserts that certain ToCI employees acted with deliberate indifference to his serious medical needs and used excessive force in violation of the Eighth Amendment's Cruel and Unusual Punishment Clause.

On March 29, 2019, Plaintiff, then on a "constant suicide watch," met with Defendant Knaggs, then a ToCI social worker, in the ToCI health unit. (Doc. 11, PgID. 322). He told Knaggs, in

response to her questioning, that he was still feeling suicidal, was severely depressed, and wanted to hang himself. (*Id*.).

Knaggs told Plaintiff that she was going to transfer him from constant suicide watch to "mental health observational status," whereby a corrections officer ("C.O.") would check on him at half-hour intervals rather than keep him under constant watch. (*Id*.). He would remain in his same cell, however, which was a "suicide safety cell." (*Id*.).

Plaintiff told Knaggs that, if left alone, he was going to commit suicide. (*Id*.). Knaggs asked Plaintiff how he was going to do so. (*Id*.). He said that he would cut up his suicide blanket on a sharp edge of his bed. (*Id*.). In response, Knaggs said she would have an officer conduct a strip search of plaintiff and his cell. (*Id*.).

According to Plaintiff, he told Defendant Logan, a C.O. who accompanied him back to his cell, that he was going to attempt suicide. (*Id*.).

As discussed below, there is, however, no corroboration that supports his contentions in that regard.

Later in his cell, Plaintiff, unfortunately, attempted suicide by using the fabric from his mattress to hang himself from a ceiling vent. (Doc. 33-2, PgID. 524). Defendant Piotrowski, a C.O., saw Plaintiff attempting to hang himself in his cell. (Doc. 33-3, PgID. 574). He commanded Plaintiff to stop trying to hang himself and to stand up, which would have relieved the pressure of the noose on Plaintiff's neck. (*Id*.). When Plaintiff did not follow Piotrowski's commands, he "sprayed a short burst of O.C. in his cell," and then called for emergency backup assistance. (*Id*.).

ToCI staff gained access to Plaintiff's cell, lifted him by his arms to take the pressure off his neck, and cut his noose. (Doc. 33-3, PgID. 575). Plaintiff experienced seizures and was immediately hospitalized, and later, intubated. (Doc. 33-5, PgID. 618).

Plaintiff alleges that he was unconscious when Piotrowski sprayed him with mace, which, Plaintiff alleges, was excessive force and damaged his airway. (Doc. 38, PgID. 647).

As discussed below, there is no corroboration for this contention, either.

**Legal Standard**

Established law provides that summary judgment is appropriate where the evidence presented in the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If satisfied, then the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). I draw all justifiable inferences from the evidence presented in the record in the light most favorable to the non-moving party. *Woythal v. Tex–Tenn Corp.*, 112 F.3d 243, 245 (6th Cir. 1997).

**Discussion**

**a. Deliberate Indifference Claim and Ohio State-Law Negligence Claim Against Defendants Knaggs and Logan**

Plaintiff fails to set forth a claim under both the Eighth Amendment for deliberate indifference and under Ohio state-law for negligence against Knaggs and Logan. Plaintiff alleges that he told ToCI staff of his intention to commit suicide, but that staff was deliberately indifferent to his report. Plaintiff's negligence claim arises out of the same facts and elements as his federal claim.

I dismiss both claims.

The Eighth Amendment establishes a right to be free from "cruel and unusual punishments." U.S. Const. amend. VIII. In *Estelle v. Gamble*, the Supreme Court held that a prison official's

3

"deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. 429 U.S. 97, 104 (1976).

A deliberate indifference claim has an objective and subjective component. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A prisoner's medical need must be "sufficiently serious" to satisfy the objective component. *Id*. at 702-03 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

"To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he [or she] did in fact draw the inference, and that he [or she] then disregarded that risk." *Id*. at 703 (citing *Farmer*, *supra*, 511 U.S. at 837).

Plaintiff fails to meet either component.

In support of his claim that he proclaimed his suicidal intentions, Plaintiff submits signed documents from two other inmates, Matthew Hinkston and Carl Lavette. (Docs. 39, 40). These documents, which Plaintiff styles as "affidavits," raise serious concerns.

Plaintiff explains that he drafted the content of the affidavits himself based on a phone conversation with his girlfriend, signed them himself, and then later obtained Hinkston and Lavette's signatures on the same statements. He included a description of this process in his opposition brief.[1] (*See* Doc. 38-1, PgID. 340, 348, 666). He explains his decision to draft and sign the affidavits himself before obtaining the witness' signatures:

> So I thought outside of the box. How can I let the Judge know I had received my witness's statements, without having the properly formatted and notarized physical statements? Well, couldn't I just *swear* that I received their statements, and then

---

[1] Plaintiff originally included a similar document styled as an affidavit of a third witness, Eric Stenson. (Doc. 11-1, PgID. 346). However, Plaintiff never filed a later version of that document with Stenson's signature. Thus, I need not consider or discuss Stenson's "statement" further.

4

>   swear *by* what their statements read? So that's what I did, and they were accepted into Action by the Court.

*Id*. (emphasis in original).

The problem for Plaintiff is that these statements, though later signed by Hinkston and Lavette, are not evidence. They are not even third-party hearsay; they are simply Plaintiff's variant mode of expressing his underlying—and otherwise unsupported claim—that he announced his suicidal inclination loudly and clearly for one and all, including institutional staff, one presumes, to hear.

The affidavits are thus, at most, Plaintiff's self-generated assertion that members of the institution staff could have heard what he allegedly was saying—and that they, thereafter, should have intervened to prevent his intentions.

Before Plaintiff's suicide attempt, Knaggs ordered that Plaintiff be removed from twenty-four/seven suicide watch and placed on thirty-minute interval watch. She –rightly or wrongly— concluded that, despite Plaintiff's earlier suicidal ideation, reduced observation sufficed to ensure his safety from self-inflicted harm. Plaintiff remained, however, in the same suicide-safe cell that he occupied when he was on twenty-four/seven watch. And indeed, it did suffice. While Plaintiff did, regrettably, attempt suicide, ToCI staff saved his life.

There being no evidence that anyone working for the institution knew what Plaintiff was about to do to himself, there can be no liability against Knaggs or Logan. I grant Defendants summary judgment on these claims.

   b. **Excessive Force Against Piotrowski**

Plaintiff fails to set forth an excessive force claim against Defendant Piotrowski.

"The Eighth Amendment proscribes the unnecessary and wanton infliction of pain against prisoners." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (citing *Whitley v. Albers*, 475

5

U.S. 312, 319 (1986)). Plaintiffs must satisfy both objective and subjective components to bring a claim for a prison guard's misuse of force. *Id*.

Under the subjective component, "[t]he relevant inquiry is 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Id*. (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)).

Factors to consider include "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley*, *supra*, 475 U.S. at 321.

A plaintiff must allege that the injury suffered was "sufficiently serious" to satisfy the objective component. *Williams*, *supra*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). This is an evolving standard that is "responsive to contemporary standards of decency." *Id*. (quoting *Hudson*, *supra*, 503 U.S. at 8-9). However, "[t]he seriousness of the injuries are not dispositive." *Id*. Malicious and sadistic uses of force will always violate contemporary standards of decency even absent a significant injury. *Id*. (citing *Hudson*, *supra*, 503 U.S. at 9).

Plaintiff cannot satisfy either component. There is no evidence that Plaintiff was unconscious at the time Defendant Piotrowski sprayed him with mace. Nor is there evidence that Piotrowski did so with malice.

Indeed, Defendants provided me with video surveillance of Plaintiff's cell block at the time of his suicide attempt. (*See* Doc. 34). The video does not establish whether Plaintiff was already unconscious—or not—when Piotrowski found him and sprayed him with mace. Between the fact that Plaintiff's cell door blocks a clear view of Plaintiff's condition, and the fact that staff surrounded Plaintiff straightaway in their efforts to rescue him, the video does not corroborate Plaintiff's version of events.

6

It does, however, demonstrate that Piotrowski and others acted with the appropriate level of urgency in entering Plaintiff's cell, cutting him down from his noose, and stabilizing him until he could be transported to the hospital.

On being alerted that Plaintiff was attempting suicide in his cell, Piotrowski found Plaintiff hanging from a vent. It is undisputed that Plaintiff appeared to be struggling. After Plaintiff refused Piotrowski's command, he sprayed mace at Plaintiff to bring him under control.

Piotrowski had, in the meantime, called "Man Down," summoning the assistance of others.

Piotrowski's use of mace was not constitutionally excessive. Indeed, his actions, especially in light of the apparent effort Plaintiff made to resist Officer Piotrowski's instruction, justified the limited use of mace as a means of controlling the Plaintiff and enabling help to be provided to him.

Plaintiff claims the mace irritated his airway but does not allege, nor has he demonstrated, that he was seriously injured from the mace alone or that the mace contributed to his injuries in any way. Indeed, Plaintiff hung himself by the neck, and was later intubated, which, in all likelihood damaged his airway more significantly than the single squirt of mace Piotrowski supplied.

In any event, under the qualified immunity doctrine that the Supreme Court proclaimed in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), Piotrowski is entitled to qualified immunity.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. at 818. To overcome qualified immunity, plaintiff must also show that his violated rights were clearly established. He has not done so.

There is simply no evidence that Piotrowski knew or had reason to know that his action might somehow violate clearly established constitutional law. He acted in the heat and stress of the

7

moment. He was trying to save Plaintiff's life; not endanger it. Even if the force he used—a squirt of mace—may have been ill-advised in retrospect, it was certainly not deliberately excessive. Nor was it violative of clearly established constitutional law.

Accordingly, I grant summary judgment in Defendants' favor on Plaintiff's excessive force claim.

### c. Defendants' Motion to Strike

On June 18, 2024, Defendants filed a motion to strike Plaintiff's notice of filing a supplemental exhibit in support of his opposition to Defendants' summary judgment motion. (Doc. 46).

As an initial matter, Rule 12(f) motions to strike apply to "pleadings." *See* Fed. R. Civ. P. 12(f). Pleadings are, as defined under the federal rules,

> a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14, and a third-party answer, if a third-party complaint is served.

Fed R. Civ. P. 7(a).

In short, an exhibit to an opposition for summary judgment is not a "pleading."

Nonetheless, the exhibit Plaintiff submitted is irrelevant to this case. It is a 2021 ToCI Inspection Report. Plaintiff explained that the report found that ToCI "had an insufficient number of 'safe cells' available for the caseload of inmates suffering mental health problems." (Doc. 45, PgID. 741-42). This, Plaintiff argues, demonstrates that "this situation was known to ToCI staff at the time of plaintiff's attempted suicide or at least a question of material fact is at issue." (*Id.*).

I disagree. This report, authored in 2021, has no bearing on whether ToCI staff knew in 2019, at the time of Plaintiff's suicide attempt, whether it provided a sufficient number of "safe cells." Moreover, no one disputes that Plaintiff was placed in a "safe cell" at the time of his suicide

attempt; thus, the fact that the total number of cells may have been insufficient in 2021 has no bearing, whatsoever, on this case.

I have already granted summary judgment in Defendants' favor without consideration of this exhibit. However, as discussed, even if I were to consider it, it does not change anything. Defendants' motion to strike is, therefore, denied as moot.

## Conclusion[2]

It is, therefore, hereby ORDERED THAT:

1. Defendants' motion for summary judgment (Doc. 33) be, and the same hereby is, granted;

2. Defendants' motion to strike (Doc. 46) be, and the same hereby is, denied as moot; and

3. I certify, under 28 U.S.C. § 1915(a)(3), that an appeal would not be taken in good faith as jurists of reason could not rationally dispute the reasoning of this Order or its result.

SO ORDERED.

*/s/James G. Carr*
Sr. U.S. District Judge

---

[2] I acknowledge the dedicated service of attorney Patricia A. Horner, Esq., assigned per our Court's Attorney Admissions Fund expense program, to represent the Plaintiff *pro bono*.